No. 99-129

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 231

301 Mont. 281

8 P. 3d 790

IN THE MATTER OF DECLARING

B.F., R.F., and M.S., Jr.,

Youths in Need of Care.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard R. Buley, Tipp & Buley, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Elizabeth S. Baker,

Chief Deputy Attorney General, Helena, Montana

Fred R. Van Valkenburg, Missoula County Attorney; Leslie Halligan,

Deputy County Attorney, Missoula, Montana

Paulette Ferguson, Attorney at Law, Missoula, Montana (Guardian ad Litem)

Submitted on Briefs: March 9, 2000

Decided: August 24, 2000

Filed:

_____

Clerk


Justice Jim Regnier delivered the opinion of the Court.

¶1Appellant (hereinafter "M.F."), the mother of B.F., R.F., and M.S. Jr. appeals from the Findings of Fact, Conclusions of Law and Order issued by the Fourth Judicial District Court, Missoula County, terminating her parental rights with respect to B.F., R.F., and M. S. Jr. We affirm. M.F. raises the following issue on appeal: Whether the District Court abused its discretion in terminating M.F.'s parental rights with respect to M.S. Jr.?

## BACKGROUND

¶2 On November 14, 1995, the Department of Public Health and Human Services ("DPHHS") received a referral alleging that M.F.'s children had been sexually abused by her live-in boyfriend. The children were placed at Extended Family Services with the consent of M.F. Subsequent investigation by the Missoula Police Department revealed that the children were encouraged to look at pornographic magazines and watch pornographic movies; M.F. and her boyfriend had sex in front of the children; B.F.-who was only 12 years old at the time-was taking birth control pills and had been purchased a sexual device; and that all three children had been sexually abused. M.F.'s boyfriend was eventually convicted on three counts of sexual assault. M.F. was never charged with any crime.

¶3 The incidents of sexual abuse by M.F.'s boyfriend had begun some time earlier when he lived with the family in a Missoula trailer court. Although both girls told their mother about the abuse at that time, M.F. did nothing. M.F. and her boyfriend separated for a time and the family moved to a different residence. However, despite the fact that her children had informed her that her boyfriend had sexually assaulted them, M.F. allowed her boyfriend to move into the family residence. M.F.'s older daughter eventually told a friend

about the incidents of abuse. Her friend's mother approached M.F. and they both agreed to report these incidents to the police which led to the current referral to DPHHS

¶4 This was not M.F.'s first contact with DPHHS. In 1984 she was referred to DPHHS on allegations of abuse and neglect with regard to her oldest child. DPHHS received another referral in 1985. In 1986 both of M.F.'s daughters were placed in foster care after police discovered them locked in their room with no clothes on and feces smeared on them and on the wall. These proceedings were dismissed in 1988 after M.F. successfully completed a treatment plan. Again, in 1990, DPHHS received a referral regarding M.F.'s treatment of her children. Thereafter, DPHHS continued to provide support and foster care services whenever M.F. was unable to cope with parenting or was under stress.

¶5 On November 16, 1995, the court granted an order for protective services. The court subsequently appointed Susan Leaphart as special master to oversee the case. On March 8, 1996, the parties entered into a stipulation requiring M.F. to obtain a psychological evaluation and participate in individual and family therapy. This stipulation was approved by the special master and entered as an order. As required by her stipulated treatment plan, M.F. underwent a psychological evaluation by Dr. Paul Bach. On September 2, 1997, the special master entered another stipulation between the parties.

¶6 On May 19, 1998, DPHHS filed a petition for permanent legal custody and right to consent to adoption. The court heard two days of testimony, during which time M.F.'s two oldest children, B.F. and R.F. (ages 15 and 13, respectively), testified that they felt that terminating the parent-child legal relationship with their mother was in their best interest. On December 7, 1998, the District Court entered its Findings of Fact, Conclusions of Law and Order terminating M.F.'s parental rights to all three children. M.F. appeals the termination of her parental rights with respect to her youngest child, M.S. Jr.

## STANDARD OF REVIEW

¶7 In reviewing a decision to terminate parental rights, this Court determines whether the district court's findings of fact supporting termination are clearly erroneous and whether the district court's conclusions of law are correct. *In re J.H.*, 2000 MT 11, ¶ 20, 994 P.2d 37, ¶ 20, 57 St. Rep. 60, ¶ 20. In regard to the statutorily required findings supporting termination, we have stated:

[A] natural parent's right to care and custody of a child is a fundamental liberty

interest, which must be protected by fundamentally fair procedures. Accordingly, prior to terminating an individual's parental rights, the district court must adequately address each applicable statutory requirement to determine if it has been established, and the burden is on the party seeking termination to demonstrate by clear and convincing evidence that every requirement set forth in the statute has been satisfied. In the context of parental rights termination cases, we have defined clear and convincing evidence as simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of the proof.

*In re P.M., 1998 MT 264, ¶ 12, 291 Mont. 297, ¶ 12, 967 P.2d 792, ¶ 12 (citations and quotations omitted). Therefore, a finding that a statutory requirement has been satisfied is clearly erroneous if it is not supported by clear and convincing evidence. See In re P.M., ¶ 25.*

## DISCUSSION

¶8 Whether the District Court abused its discretion in terminating M.F.'s parental rights with respect to M.S. Jr.?

¶9 The District Court ordered the termination of M.F.'s parental rights with respect to M.S. Jr. on three different legal grounds. The court ordered the termination of M.F.'s parental rights pursuant to § 41-3-609(1)(d), MCA (1997), which provides that a court may order termination if "the parent is convicted of a felony in which sexual intercourse occurred."[1] The court also ordered termination of M.F.'s parental rights pursuant to § 41-3-609(1)(f), MCA (1997), because it found that M.F. had substantially failed to successfully complete or meet the goals of her treatment plan and that M.F.'s children had been in out-of-home placement for a cumulative total period of more than one year. Lastly, the court ordered the termination of M.F.'s parental rights pursuant to § 41-3-609(1)(e), MCA (1997), because it found that M.S. Jr. was a youth in need of care, M.F.'s treatment plan had not been complied with or was not successful, and M.F.'s conduct which rendered her unfit was unlikely to change within a reasonable time. Each of the preceding reasons is sufficient on its own to permit the termination of a parent-child legal relationship. *See* § 41-3-609(1), MCA (1997). We limit our review of the District Court's authority to terminate M.F.'s parental rights with respect to M.S. Jr. to a review of its authority under § 41-3-609(1)(e), MCA (1997), because it is dispositive of the issue.

¶10 The District Court ordered termination of M.F.'s parental rights pursuant to § 41-3-609 (1)(e), MCA (1997), because it found that M.F. had failed to comply with her treatment plan and that, despite the efforts of many professionals and services, M.F. remained unfit, unable or unwilling to give the children adequate parental care. Section 41-3-609(1)(e), MCA (1997), provides:

> A court may order termination of the parent-child relationship upon a finding that . . . the child is an adjudicated youth in need of care and both of the following exist:
>
>> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
>>
>> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

¶11 M.F. does not dispute the District Court's finding that M.S. Jr. is an adjudicated youth in need of care. M.F. does dispute the District Court's finding that she failed to comply with her treatment plan. M.F. contends that the treatment plan approved by the court required her to be evaluated by a psychologist approved by DPHHS and to agree to abide by all of the recommendations made by that psychologist. M.F. claims that the testimony of her therapist indicates that she did everything her therapist asked. M.F. also disputes the District Court's finding that her conduct or condition which rendered her unfit was unlikely to change in a reasonable time. M.F. claims that Dr. Joan Hess-Homeier recommended that she be reunited with M.S. Jr. and testified that she had made progress in her therapy and would continue to make progress.

¶12 There is clear and convincing evidence to support the District Court's finding that M.F. did not successfully comply with her treatment plan as required by § 41-3-609(1)(e)(i), MCA (1997). M.F.'s children were placed in foster care in November 1995. M.F.'s treatment plans took the form of two separate "stipulations" between M.F. and DPHHS which were entered as orders by the special master on March 8, 1996, and September 2, 1997. Pursuant to both stipulations, M.F. agreed to participate in individual and family therapy, submit to a comprehensive evaluation to determine any potential areas of concern, and participate in any therapy and counseling recommended by the therapist after an evaluation was completed. Dr. Paul Bach performed a psychological evaluation of M.F. As a result of his findings, Dr. Bach recommended family therapy with Dr. Michael

Marks, individual therapy as long as deemed necessary, that M.F. not relinquish care of her children to male companions, and that adult males not be present during her visitations with her children.

¶13 M.F. did not successfully comply with Dr. Bach's recommendations. M.F. did not successfully participate in or complete family therapy. M.F. began family therapy with Dr. Marks in September 1996. Dr. Marks testified that he ended family therapy in February 1997 because M.F. refused to accept responsibility, refused to recognize the concerns of her children, and the family sessions usually ended in a fight with M.F. leaving the office. M.F. attempted to satisfy the family therapy requirements of her treatment plan with psychologist Dr. Hess-Homeier. Dr. Hess-Homeier held family therapy sessions with M.F. and M.S. Jr. from September 1997 until May 1998. However, M.F. terminated family and individual therapy in May 1998 after she learned that DPHHS planned to seek termination of her parental rights following a Family Services assessment performed by Simon Fickinger.

¶14 M.F. did not comply with Dr. Bach's recommendation that adult males not be present during her visitations with her children. M.F.'s daughter testified that M.F. allowed an adult male, her boyfriend at the time, to be present during unsupervised visits. Teddi Johannsen, the social worker involved with the treatment plan phase of this case, drafted an agreement asking M.F. not to have her boyfriend around during visitations. M.F. refused to sign the agreement and subsequently stopped requesting visitations for a five-month period.

¶15 From the testimony of the professionals involved in this case, it is also clear that M.F.'s treatment plan was unsuccessful in rendering M.F. capable of adequately parenting her children. "[A] parent must not only comply with the treatment plan, but the treatment plan must also be successful." *In re E.W.*, 1998 MT 135, ¶ 26, 289 Mont. 190, ¶ 26, 959 P.2d 951, ¶ 26. As the State observes, not one single professional involved in M.F.'s case testified that M.F.'s treatment plan was successful. Ms. Johannsen testified that the therapy M.F. underwent was not successful in addressing the issues M.F. needed to address such as M.F.'s ability to put the needs of her children above her own. Dr. Marks testified that he terminated family therapy because M.F. was unwilling to accept responsibility. Even Dr. Hess-Homeier, who testified she believed that an eventual reunification between M.F. and M.S. Jr. was possible, stated that M.F. still had "a ways to go" on important issues such as anger management. From the evidence adduced by the District Court, it appears that after years of therapy, M.F. remains unfit to adequately care for her children.

¶16 There is also clear and convincing evidence to support the District Court's finding that M.F.'s conduct or condition which rendered her unfit as a parent was unlikely to change within a reasonable time as required by § 41-3-609(1)(e)(ii), MCA (1997). Section 41-3-609, MCA (1997), requires, in relevant part:

> (2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care.

> . . . .

> (3) In considering any of the factors in subsection (2) in terminating the parent-child relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child.

¶17 The District Court found that continued custody of M.S. Jr. by M.F. was likely to result in serious emotional or physical harm. The court stated that this finding was supported by evidence of multiple serious domestic abuse incidents, M.F.'s continued unwillingness to acknowledge the trauma suffered by her children, and M.F.'s failure to cooperate with DPHHS and other professionals to complete the requirements of the treatment plans and appropriately participate in family therapy with the children. The court observed that M.F. has a long history of being unable to provide a stable environment for the children, has failed to attend to their emotional and medical needs, and has failed to protect them from violence and sexual abuse.

¶18 The District Court's finding that, given the physical, mental, and emotional needs of M.S. Jr. continued custody was likely to result in his continued abuse or neglect, or the conduct or condition of M.F. rendered her unfit, unable, or unwilling to give M.S. Jr. adequate parental care is supported by clear and convincing evidence. Of all the witnesses involved in this case, only Dr. Hess-Homeier testified that it was possible that had M.F. continued therapy, reunification of M.F. with M.S. Jr. was possible. However, Dr. Hess-Homeier's testimony was based on her perception that M.S. Jr. wanted to be reunited with M.F., and not that it would be in his best interest to be reunited with his biological mother. Dr. Bernard Balleweg, M.S. Jr.'s primary therapist at the time of the court hearing, testified that M.S. Jr. needed a family environment characterized by very high levels of

nurturance, stability, predictability, and, importantly, an environment free from any risk of further sexual abuse or violence.

¶19 Given M.F.'s inability to follow the recommendations of Dr. Bach in regard to exposing her children to her adult male companions, the repeated testimony regarding her inability to put her children's needs before her own (including her historical inability to select appropriate male companions and accept responsibility for placing her children in dangerous circumstances), her inconsistent history of visitation with M.S. Jr. and Dr. Balleweg's testimony regarding M.S. Jr.'s needs, we believe that the District Court's finding that it would be in the best interest of M.S. Jr. to terminate the parent-child legal relationship is amply supported by the record.

¶20 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

1. We note that although M.F.'s former boyfriend was convicted of three counts of sexual assault with regard to M.F.'s children, there is no evidence in the record that M.F. was convicted of a felony in which sexual intercourse occurred.