No. DA 06-0290

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 70

IN THE MATTER OF L.H.,

     A Youth In Need Of Care.

APPEAL FROM:    The District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause DN 05-04,
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

     For Appellants:

          Amy N. Guth, Attorney at Law, Libby, Montana (Mother)

          Jim Wheelis, Chief Appellate Defender; Joslyn Hunt, Assistant
Appellate Defender, Helena, Montana (Father)

     For Respondent:

          Honorable Mike McGrath, Attorney General; Tammy K. Plubell,
Assistant Attorney General, Helena, Montana

          Bernard G. Cassidy, County Attorney; James Reintsma, Deputy
County Attorney, Libby, Montana

Submitted on Briefs:  November 9, 2006

Decided:  March 13, 2007

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Father M.H. and Mother A.S. appeal from the judgment entered by the Nineteenth Judicial District Court, Lincoln County, terminating their parental rights to L.H. We affirm.

¶2    We restate the issues on appeal as follows:

¶3    (1)  Did the District Court abuse its discretion by terminating Father M.H.'s parental rights to L.H.?

¶4    (2)  Did the District Court fail to make requisite statutory findings before terminating Mother A.S.'s parental rights to L.H.?

## BACKGROUND

¶5    L.H. was born on September 9, 2004, to A.S. and M.H. A.S. had previously given birth to S.S. and K.H., and M.H. is the natural father to K.H. While A.S. was pregnant with L.H., M.H. voluntarily relinquished his parental rights to K.H. following his failure to comply with two treatment plans by reason of criminal activity involving alcohol and drug use. In a separate proceeding, A.S.'s parental rights to S.S. and K.H. were also involuntarily terminated by the District Court. An appeal taken by A.S. in that proceeding, before this Court as Cause No. DA 06-0088, was dismissed by this Court. Although this case addresses L.H. only, the proceeding regarding S.S. and K.H. affects this matter and thus will be referenced herein.

¶6    When L.H. was born, the proceeding initiated by the Department of Public Health and Human Services (DPHHS) regarding A.S.'s other two children was pending, and the District Court had, on August 18, 2003, adjudicated S.S. and K.H. as youths in need of

2

care. The children, although still residing with A.S. and M.H., were under the temporary legal custody of DPHHS.[1] Upon L.H.'s birth, DPHHS did not amend its proceeding to include L.H., because A.S. and M.H. were already working under a court-approved treatment plan, which DPHHS believed offered necessary protections for L.H.

¶7 Two months after L.H.'s birth, A.S. was committed to the custody of the Department of Corrections and was incarcerated until February 2006. L.H. remained in the care of M.H., but was removed from M.H. by DPHHS on February 23, 2005, following M.H.'s arrest for a probation violation—testing positive for methamphetamine. In a separate proceeding, DPHHS filed a petition for emergency protective services and temporary legal custody of L.H. On February 28, 2005, the District Court granted that petition, finding probable cause to believe that L.H. had been abused or neglected and immediate protection was required. The court also appointed a guardian ad litem for L.H. Following a show cause hearing on March 14, 2005, the District Court entered an order purporting to adjudicate L.H. as a youth in need of care, and granting DPHHS temporary legal custody of L.H. for a period of six months.

¶8 On March 23, 2005, the State filed a motion for permanency plan hearing in L.H.'s case. Because a separate permanency plan hearing had also been scheduled in DN-02-01—the proceeding involving S.S. and K.H.—the court consolidated the two cases and set a single permanency plan hearing for all three children. At the permanency plan hearing, counsel for A.S. raised an objection to the proceeding, arguing that the March 14, 2005, show cause hearing did not satisfy statutory procedural requirements for

---

[1]A.S. and M.H. then resided together, but were not married.

adjudication of L.H. as a youth in need of care. The District Court concurred and scheduled an adjudicatory hearing for L.H. Prior to that hearing, the parties filed a stipulation which stated, in part, that all three children "are Youths in Need of Care by reason of the incarceration of their natural mother, [A.S.]; abandonment by the natural father of S.S., [A.G.]; and incarceration of the natural father of [K.H.] and [L.H.], [M.H.]." Based on this stipulation, the court entered a new order adjudicating L.H. as a youth in the need of care and vacating the adjudicatory hearing.

¶9 On August 1, 2005, a dispositional hearing was held and attended by counsel for both parents, but by neither parent, who were both incarcerated. At the hearing, the District Court approved the proposed treatment plans for M.H. and A.S., allowing for appropriate future modifications to be made to the plan upon either parent's release, and extended DPHHS's temporary legal custody of the children.

¶10 Thereafter, DPHHS petitioned to terminate both parents' rights to S.S. and K.H., based upon the parents' actions under the treatment plans regarding those children. On December 13, 2005, the District Court entered an order separating L.H. from the case involving S.S. and K.H. However, on January 10, 2006, DPHHS filed a petition to terminate both parents' rights to L.H as well. The petition alleged that neither parent had complied with their respective treatment plan, and, alternatively, with regard to A.S., a treatment plan was not necessary as A.S.'s parental rights to L.H.'s siblings had already been involuntarily terminated, and the circumstances of that termination were relevant to her ability to adequately care for L.H.

4

¶11 On March 2, 2006, the District Court conducted a hearing on the petition to terminate parental rights to L.H., with both parents and their respective counsel attending. The court took judicial notice of DC-03-19 and DC-03-36, two criminal cases involving M.H. and A.S., respectively. The court also took judicial notice of companion case DN-02-01, involving L.H.'s two older siblings, wherein the court had by then entered an order terminating both parents' rights to those children. Neither party objected to the court taking judicial notice of these actions.

¶12 On March 22, 2006, the District Court issued its findings of fact, conclusions of law, and order terminating both M.H.'s and A.S.'s parental rights to L.H. and awarding permanent legal custody of L.H. to DPHHS. M.H. and A.S. appeal.

## STANDARD OF REVIEW

¶13 "A district court's decision to terminate parental rights is discretionary and we review that decision to determine whether the court abused its discretion." *In re J.W.,* 2001 MT 86, ¶ 7, 305 Mont. 149, ¶ 7, 23 P.3d 916, ¶ 7 (citing *In re Custody of C.F.,* 2001 MT 19, ¶ 11, 304 Mont. 134, ¶ 11, 18 P.3d 1014, ¶ 11). However, "[a] parent's right to care and custody of a child is a fundamental liberty interest." *In re J.A.B.,* 1999 MT 173, ¶ 14, 295 Mont. 227, ¶ 14, 983 P.2d 387, ¶ 14. Therefore, when determining whether to terminate parental rights, a district court must make specific factual findings in accordance with the requirements set forth in § 41-3-609, MCA. *Custody of C.F.,* ¶¶ 11-12. We review those findings of fact to determine whether they are clearly erroneous. *Custody of C.F.,* ¶ 11. This Court explained the clearly erroneous standard as follows:

5

A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if, upon reviewing the record, this Court is left with the definite and firm conviction that the district court made a mistake.

*In re J.W.,* ¶ 7 (citing *Custody of C.F.,* ¶ 11). We review a district court's conclusions of law in terminating parental rights for correctness. *In re B.F.,* 2000 MT 231, ¶ 7, 301 Mont. 281, ¶ 7, 8 P.3d 790, ¶ 7.

## DISCUSSION

¶14 A District Court may terminate an individual's parental rights if it finds by clear and convincing evidence that the child has been adjudicated a youth in need of care; an appropriate court-approved treatment plan has not been complied with or has been unsuccessful; and the conduct or condition rendering the parent unfit is unlikely to change within a reasonable period of time. Section 41-3-609(1)(f), MCA. The District Court concluded that these three statutory conditions had been established regarding M.H. and A.S. and therefore terminated their parental rights to L.H.[2]

¶15 *(1) Did the District Court abuse its discretion by terminating Father M.H.'s parental rights to L.H.?*

¶16 M.H. argues the District Court erred in terminating his parental rights, because the court lacked substantial evidence to do so and thereby abused its discretion. In its findings of fact, conclusions of law, and order terminating M.H.'s parental rights, the District Court found that:

---

[2]We again note that, pursuant to the stipulation entered by A.S. and M.H., the District Court entered an order adjudicating L.H. as a youth in need of care, which satisfied the first statutory factor.

while the magnitude of the parents' noncompliance with the treatment plans in this particular case is not monumental, the noncompliance must be viewed in the context of their previous failures and the limited treatment plan requirements and limited opportunities they had to fail. If A.S. and M.H. cannot obey the rules for a period of months in a strictly controlled environment, knowing the possible consequences of failure, it is unrealistic to conclude that they would be able to obey the rules over a much longer period of time in an unstructured environment.

Addressing the likelihood of change by M.H., the court found that:

The conduct which renders M.H. an unfit parent is not likely to change within a reasonable time. This finding is based upon the fact that M.H. is presently incarcerated with an uncertain parole date. Further, M.H. has a long-term drug and alcohol problem and has repeatedly demonstrated inability to obey the law and abide by society's rules. The welfare and future of a young child is to[o] important to gamble on the improbability that M.H. will be prepared and able, once he is paroled, to live a drug-free, crime-free life.

¶17 Based on these findings, the court concluded:

The statutory criteria for termination of A.S.'s and M.H.'s parental rights, as set forth in § 41-3-609(1)(f), MCA, have been met. Appropriate treatment plans were approved by the Court but were not complied with by either parent. The conduct or conditions which render A.S. and M.H. unfit to parent L.H. are unlikely to change within a reasonable time. In reaching this conclusion, the Court gives primary consideration to the physical, mental, and emotional conditions and needs of the child.

. . . .

Taking into account the physical, mental, and emotional needs of the child, the Court concludes that it is in the best interests of L.H. to terminate the parents' parental rights and to authorize the Department to consent to the child's adoption.

*a. Completion of Treatment Plan*

¶18 M.H. contends he was successful in completing the conditions of his treatment plan to the extent that it was possible for him. M.H. argues that he completed ten months

of AA/NA meetings while incarcerated but contends he was unable to provide written documentation of this attendance, because he was not allowed to take paper or pencils into the meetings. He states that he sent L.H. written correspondence, only stopping when he ran out of envelopes. He also offers that he could not satisfy the condition of calling his social worker via the toll free number because the jail only allowed him to place collect calls. Consequently, given these obstacles, M.H. maintains that his only true "failure" was the write-up he received for being on the wrong floor while he was in the county jail, and that this infraction does not constitute substantial evidence that he was unfit to parent L.H., but, rather, that he was "successful with his treatment plan."

¶19 "We have repeatedly held that complete compliance with a treatment plan is required, as opposed to partial compliance or even substantial compliance." *In re A.A.,* 2005 MT 119, ¶ 31, 327 Mont. 127, ¶ 31, 112 P.3d 993, ¶ 31 (citing *In re D.V.,* 2003 MT 160, ¶ 27, 316 Mont. 282, ¶ 27, 70 P.3d 1253, ¶ 27) (citation omitted). Moreover, the relevant statute, § 41-3-609(1)(f)(i), MCA, "is written in the disjunctive—a treatment plan has not been complied with *or* has not been successful" and "completing all tasks in a treatment plan does not necessarily mean the plan is 'successful.'" *In re A.F.,* 2003 MT 254, ¶ 25, 317 Mont. 367, ¶ 25, 77 P.3d 266, ¶ 25 (citations omitted).

¶20 M.H. had a history of criminal conduct and had failed to complete previous treatment plans and rules of probation, making it particularly important for M.H. to demonstrate that he could maintain a clean record while incarcerated. Indeed, his treatment plan herein required that he have "[n]o criminal activity, write-ups or disciplinary infractions while incarcerated." Yet, as M.H. admits, he committed a rule

8

infraction while at the Flathead County Detention Facility by remaining on an off-limits floor of that facility. Additionally, at the termination hearing, detention officers who had M.H. in their charge testified about several other rule infractions, including M.H.'s continuing correspondence with A.S. in knowing violation of a facility rule, showing disrespect to a detention officer, and wrapping his head and body in a blanket in the day area even though this conduct was forbidden for safety reasons.

¶21 Given a treatment plan which contemplated his incarceration, M.H. nonetheless was unable to comply with conditions. He offered various reasons why he failed to provide written documentation of his AA/NA attendance, failed to correspond to L.H., and failed to keep in contact with his social worker, but the District Court determined these to be unpersuasive, finding that "A.S. was relatively compliant with these requirements, but M.H. was not." Indeed, while M.H. alleges that he could not write to L.H. because he only received two envelopes and four pieces of paper every two weeks, the testimony indicated that M.H. did not have any contact with his son over a five- to six-month period. Such a huge lapse in contact cannot be excused on the basis of insufficient envelopes and provides clear evidence in support of the District Court's findings.

¶22 We do not disturb a trial court's finding of fact on abuse and neglect unless it is clearly erroneous. *In re F.M.*, 2002 MT 180, ¶ 21, 311 Mont. 35, ¶ 21, 53 P.3d 368, ¶ 21. Here, the District Court did not misapprehend the effect of the evidence, nor are we left with a firm conviction that the District Court made a mistake. Rather, the District Court's findings that M.H. failed to complete the minimal tasks of the treatment plan in a

9

strictly controlled environment are supported by substantial evidence. While some of M.H.'s infractions may seem insignificant individually, in light of his prior failures with treatment plans, his current plan, and his circumstances, they were not inconsequential. We conclude that the District Court correctly concluded that M.H. failed to successfully complete his treatment plan.

b. *M.H.'s Conduct or Condition Unlikely to Change Within Reasonable Time*

¶23 Under § 41-3-609(1)(f)(ii), MCA, the court must conclude that "the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Section 41-3-609(2), MCA, provides criteria for a court's consideration of this issue, stating:

> (2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making the determinations, the court shall consider but is not limited to the following:
> (a) emotional illness, mental illness, or mental deficiency of the parent of a duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;
> (b) a history of violent behavior by the parent;
> (c) *excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child*; and
> (d) present judicially ordered long-term confinement of the parent.

Section 41-3-609(2), MCA (emphasis added). The criterion at issue here is sub-paragraph (c), "excessive use of intoxicating liquor or of a narcotic or dangerous drug" affecting M.H.'s future ability to care and provide for L.H. Section 41-3-609(2)(c), MCA. In making such a determination, we have noted that the court must "'assess past

10

and present conduct of the parent.'" *In re A.S.*, 2006 MT 281, ¶ 48, 334 Mont. 280, ¶ 48, 146 P.3d 778, ¶ 48 (quoting *In re M.A.E.,* 1999 MT 341, ¶ 37, 297 Mont. 434, ¶ 37, 991 P.2d 972, ¶ 37) (citation omitted). In *Matter of W.Z.*, 285 Mont. 16, 25, 946 P.2d 125, 131 (1997), we concluded that the District Court properly looked to the mother's extensive history of alcoholic behavior prior to finding that her conduct and behavior was unlikely to change within a reasonable time.

¶24 In addressing M.H.'s likelihood of change, the District Court entered the following finding of fact:

> The conduct which renders M.H. an unfit parent is not likely to change within a reasonable time. This finding is based upon the fact that M.H. is presently incarcerated with an uncertain parole date. Further, M.H. has a long-term drug and alcohol problem and has repeatedly demonstrated inability to obey the law and abide by society's rules. The welfare and future of a young child is to[o] important to gamble on the improbability that M.H. will be prepared and able, once he is paroled, to live a drug-free, crime-free life.

¶25 M.H. argues that the only evidence the District Court could have relied on in entering this finding was his previous failures under treatment plans regarding his daughter, K.H., to whom he ultimately voluntarily relinquished his parental rights. Thus, while acknowledging that a court may generally look at his past, M.H. nonetheless contends that, pursuant to § 41-3-423(2)(e), MCA, which permits a court to make a finding that the department need not seek reunification with the parent who has had rights to other children involuntarily terminated, it was impermissible for the court to consider his actions with regard to K.H., because he *voluntarily* relinquished his rights to K.H., and did not have them involuntarily terminated by a court. Additionally, M.H. insists the

11

circumstances relative to the termination of M.H.'s parental rights to K.H. are not relevant to the circumstances surrounding L.H. because his life circumstances have changed and he is not now involved in criminal and drug activity. We disagree with M.H.'s contentions.

¶26 The authority granted to a court by § 41-3-423(2)(e), MCA, to relieve the department from providing reunification efforts to a parent who has had parental rights to other children involuntarily terminated does not also operate to prohibit a court from considering, as evidence in a subsequent proceeding, a parent's history with regard to other children for whom the parent has voluntarily relinquished his or her parental rights. A parent's track record in the raising of children is a critical consideration in determining the parent's likelihood of future success. Therefore, M.H.'s reliance on § 41-3-423(2)(e), MCA, for such a proposition is incorrect, and the District Court did not err in looking to this evidence.

¶27 While M.H. argues that his conduct has changed since the period of time when he relinquished his rights to K.H., as he no longer abuses drugs and alcohol, he acknowledges that such use was the basis of his stipulation that L.H. was a youth in need of care. Moreover, M.H.'s positive test for methamphetamines on February 22, 2005, led to the taking of L.H. and his siblings from M.H.'s care and their placement into foster care. As the State notes, it may be true, as M.H. claims, that he was not using drugs or engaged in criminal activity for most of this proceeding. However, M.H. was incarcerated for most of that period, and thus, it would have been irresponsible for the court to overlook M.H.'s serious chemical dependency history and to simply accept

M.H.'s assertion that these problems were forever solved. The District Court's findings on the evidence, supported by judicial notice it took of the abuse and neglect proceedings for K.H. and S.S., and the criminal proceedings against M.H., were supported by substantial evidence demonstrating that M.H.'s condition rendering him unfit to parent was unlikely to change within a reasonable time. Therefore, M.H. has established no error or abuse of discretion in the District Court's termination of his parental rights to L.H.

¶28 *(2) Did the District Court fail to make requisite statutory findings before terminating Mother A.S.'s parental rights to L.H.?*

¶29 A.S.'s challenge to the District Court's findings of fact, conclusions of law and order terminating her parental rights to L.H. consists merely of incorporating the arguments set forth in her briefing filed in Cause No. DA-06-0088, her appeal in the termination proceeding for her other two children, S.S. and K.H., and attaching that brief as an exhibit to her brief filed herein. In that earlier briefing, A.S. argued that the District Court had erred by failing to make findings necessary to demonstrate that the children were youths in need of care. This Court dismissed that appeal, concluding that A.S. was raising issues for the first time, for which objections had not been made in the District Court. *See* Order, *In re the Matter of S.S. and K.H.*, No. 06-0088, October 10, 2006.

¶30 Here, within the proceeding regarding L.H., Ms. Guth, counsel for A.S., did enter an objection in the District Court that appropriate proceedings and findings establishing that L.H. was a youth in need of care had not been completed. Indeed, the State acknowledged this objection within its briefing in DA 06-0088, arguing that "Ms. Guth

13

could have objected to the district court orders when they were issued. . . . [T]his was done in the Matter of L.H. at the April 2005 hearing, when Ms. Guth objected to the lack of adjudication of L.H." Thus, unlike in DA 06-0088, A.S. is not raising this issue for first time on appeal.

¶31 However, A.S.'s arguments make no mention of the proceedings that transpired following her objection. The District Court concurred with her objection, agreeing that the March 14, 2005, show cause hearing did not satisfy the procedural requirements for adjudication of L.H. as a youth in need of care and scheduled sequential adjudicatory and dispositional hearings. Then, prior to the adjudicatory hearing, A.S., with M.H., entered a stipulation with DPHHS for adjudication of L.H. as a youth in the need of care, and based upon that stipulation, the District Court entered a new order so adjudicating L.H. In that order, the District Court also found that DPHHS had made reasonable efforts to avoid protective placement of L.H. and to safely return L.H. to the parents' home, but that such a placement was not in L.H.'s best interests. The court also then proceeded, on August 1, 2005, to a dispositional hearing. A.S. failed to make any further objection to this procedure. Accordingly, we affirm the court's termination of A.S.'s parental rights to L.H.

¶32 Affirmed.

/S/ JIM RICE

14

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART