FILED

03/31/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0090

DA 25-0090

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 70N

IN RE THE MARRIAGE OF:

GEORGE BARRETT,

       Petitioner and Appellant,

  and

PAMELA L. BARRETT,

       Respondent and Appellee.

APPEAL FROM:   District Court of the Fourteenth Judicial District,
                 In and For the County of Musselshell, Cause No. DR-17-12
                 Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Craig R. Buehler, Attorney at Law, Lewistown, Montana

       For Appellee:

       Adrian M. Gosch, Gosch Law, PLLC, Billings, Montana

                       Submitted on Briefs:  March 4, 2026

                              Decided:  March 31, 2026

Filed:

                    _____
                            Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 George Barrett (George) appeals from the January 2, 2025 Findings of Fact, Conclusions of Law and Final Decree of Dissolution issued by the Fourteenth Judicial District Court, Musselshell County. We affirm.

¶3 George asserts the District Court did not equitably distribute the parties' assets and debts between them and that in doing so the District Court erred in considering the property located at 105 Johnny's Coal Road, Roundup, Montana (105 property), as marital property. George also asserts the District Court misconstrued his health in considering maintenance.

¶4 Contrarily, Appellee, Pamela Barrett (Pamela), contends the District Court properly considered the 105 property in making a fair and equitable division of the parties' assets and debts and the District Court did not misconstrue George's health in considering maintenance.

¶5 The parties married on June 23, 2000, in Spring Hill, Florida. They have one child together, born in 2000. The parties separated February 1, 2017, when George moved out of the marital home located at 109 Johnny's Coal Road, Roundup, Montana (109 property),

and have since lived separate and apart. Shortly after the separation, George began residing nearby at the 105 property, which he asserts he inherited in 2012.

¶6 George filed a petition for divorce on July 10, 2017. A trial was held on October 11, 2022, and the court issued its findings, conclusion, and the decree from which George appeals on January 2, 2025. Additional facts will be discussed below as necessary in consideration of the issues raised.

¶7 As a district court's division of marital property is an equitable proceeding, we review the court's findings of fact for clear error and its conclusions of law for correctness. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39; *In re Marriage of Estes*, 2017 MT 67, ¶ 12, 387 Mont. 113, 391 P.3d 752. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of evidence, or if upon reviewing the record, this Court is left with the definite and firm conviction that the district court made a mistake. *In re L.H.*, 2007 MT 70, ¶ 13, 336 Mont. 405, 154 P.3d 622. On appeal, each case must be examined individually, with an eye to its unique circumstances, and absent clearly erroneous findings, the district court's property division must be affirmed. *In re Marriage of Estes*, ¶ 13.

¶8 Absent clearly erroneous findings, we will affirm a district court's division of marital property unless we determine there was an abuse of discretion. *In re Marriage of Ash*, 2024 MT 273, ¶ 12, 419 Mont. 111, 558 P.3d 1169. The test for abuse of discretion is whether the district court acted arbitrarily without employment of conscientious

3

judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Ash,* ¶ 12.

¶9 We review a district court's denial or award of maintenance to determine if the court's findings are clearly erroneous. *In re Marriage of Frank*, 2019 MT 130, ¶ 11, 396 Mont. 123, 443 P.3d 527.

¶10 The parties agree that § 40-4-202, MCA, governs the division of property in a dissolution. Section 40-4-202(1), MCA, vests district courts with broad discretion to "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title to the property and assets is in the name of the husband or wife or both." Section 40-4-202(1), MCA; *In re Marriage of Ash*, ¶ 15. It is well-settled though, that equitable apportionment does not require a 50/50 division of the property and debts. *In re Marriage of Ash*, ¶ 15. In providing for an equitable division of the parties' assets and debts under § 40-4-202(1), MCA, a court must consider:

> [T]he duration of the marriage and prior marriage of either party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage, property acquired by gift, bequest, devise, or descent, property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent, the increased value of property acquired prior to marriage, and property acquired by a spouse after a decree of legal separation, the court shall consider the contributions of the other spouse to the marriage, including:

4

(a) the nonmonetary contributions of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of the property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

**105 Property**

¶11 George asserts the District Court erred in concluding the 105 property was marital property. In 2012, during the marriage, George inherited the 105 property. George asserts that Petitioner's Exhibit #17, admitted without objection, evidences the agreement he reached and memorialized on December 28, 2014, to sell the 105 property. He contends the exhibit is a seller's financing agreement, under which the seller retains title to the property until the buyer satisfies all conditions of the agreement. George argues that at the time of trial, title to the property was still in his name, as all the conditions of the contract had not yet been met. Finally, George asserts the District Court misunderstood the time of the transfer in relation to the filing of the dissolution petition, as the seller's financing agreement was dated nearly two and a half years prior to the filing of the dissolution petition.

¶12 Pamela asserts it is unclear what the alleged December 28, 2014 document even purports to be; as acknowledged by George, it does not qualify as a contract for deed transaction under § 70-20-115, MCA. Pamela avers that it is undisputed George owned the 105 property at the time of trial and that he admitted such under oath. She contends that the handwritten exhibit—written by George and purporting to transfer the property to

his girlfriend, Jennifer Layboult (Layboult), while providing that the property would revert to the parties' child if Layboult failed to make any payments—was nothing more than an attempt by George to keep the 105 property separate and apart from the division of assets in a dissolution action. She contends the evidence supports the inclusion of the 105 property as marital.

¶13 In concluding the 105 property to be marital, the District Court analyzed that before the parties separated Pamela's name was listed on some of the utilities for the property, that she paid some of the utility expenses for the property, and she credibly testified the parties used the property to store motor vehicles and other personal property items. The District Court further considered George's proffered handwritten document claiming to transfer the property to Layboult and determined the "purported transfer smacks of a sham transaction to avoid distribution in the dissolution proceedings." In light of the other evidence presented, this determination was neither erroneous nor a misapprehension of the evidence. George testified somewhat contradictory with regard to the 105 property by first asserting he gave it to a friend, then asserting he sold it, and later admitting he still owned the property subject to an agreement with Layboult. George has resided at the 105 property since shortly after the parties separated and admitted at trial that he still owned it—his nonpayment of rent is consistent with this. Although George denied being in an intimate relationship with Layboult, she admitted they became romantically involved in 2017 and testified she was not following the terms of the purported seller's financing agreement in that she was not going to provide the additional seven years of payments for the benefit of

6

the parties' child as contemplated in the document. On balance, the evidence supports the District Court's conclusion that the 105 property was a marital asset as title remained with George.

**Equitable Division of Assets and Debts**

¶14 The District Court determined Pamela's asset and debt Disclosure Exhibit was equitable and adopted it as its equitable division of the parties' assets and debts. George contends this division misapprehends the facts not only by including the 105 property as discussed above, but by awarding him a 2018 truck that burned up and was no longer an asset. George asserts the division is inequitably lopsided in favor of Pamela and not supported by the evidence. In his reply brief, he asserts "[Pamela] received her retirement that was fully earned during the marriage," but he did not develop an argument or cite legal authority to any specific division of the retirement, nor did he do so at trial. Contrarily, Pamela asserts that although the division of assets and debts may favor Pamela, she had spent considerable funds in protecting and maintaining the marital estate; making payments on George's medical bills (including garnishments from her wages of nearly $17,000); paying real estate taxes, insurance, utilities, and repair and maintenance expenses for the real property; and paying George's health and auto insurance post-separation. It was appropriate for the District Court to take these payments into consideration in the equitable division of the marital estate. She also notes that George received considerable items of personal property, equipment, motor vehicles, and his Main Street Auto Business such that

7

his framing of the division of property—that he received only the 105 property—is factually incorrect.

¶15    From our review of the record, there was confusing and conflicting evidence as to the valuation of the 105 and 109 properties. In response to discovery, George, at one time, indicated the 105 property to be worth $155,000 and there to be $100,000 worth of pictures in addition to other valuable personal property items. He testified he owned a truck with Layboult, which he asserts burned up in 2018. Layboult testified she and George jointly owned a truck and did not indicate damage to it. Pamela testified she had no idea what pictures would be worth the amount George claimed and that much of the personal property asserted to be of value by George was of no use or value. Although George indicated he did not know the taxable valuations of either property, he agreed the 105 and 109 properties were similarly situated—the 109 property was larger but the log cabin on it was uninhabitable, whereas the 105 property had a well. Although the division of assets and debts was more favorable to Pamela, given the broad discretion vested in the District Court to determine equitable division, the court did not abuse its discretion. The District Court specifically considered the Johnny's Coal Road properties; each party's contribution to the properties; the substantial benefit to George of Pamela maintaining his health and auto insurance, especially in light of his cancer diagnosis and treatment in 2017; Pamela's considerable payments of George's medical expenses through garnishment; George's refusal to contribute expenses after the separation; the medical expenses incurred by George resulting in both parties having to undergo bankruptcy; the lack of credible

evidence presented for the court to make a determination as to the valuation of the personal property, as well as the conflicting testimony as to the existence and value of personal property; and George's questionable attempt to shelter property from marital division. Given the evidentiary presentations of the parties, the District Court's findings were not clearly erroneous. The District Court considered, as required by § 40-4-202, MCA, the duration of the marriage and the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties in apportioning the assets and debts between the parties. Based on the record before us and our standards of review, we decline to determine the division to be an abuse of discretion. When reviewing the District Court's findings as a whole, the apportionment of the parties' assets and debts between them was equitable and we find no error.

**George's Health and Maintenance**

¶16 A district court may grant maintenance if it finds the spouse seeking maintenance lacks sufficient property to provide for the spouse's reasonable needs and the spouse is unable to be self-supporting through appropriate employment. *In re Marriage of Frank*, ¶ 13; § 40-4-203(1), MCA. George asserts he is disabled, has no retirement, has no savings, and is therefore entitled to maintenance. George also asserts the District Court misconstrued his health and misapplied the factors of § 40-4-203, MCA, in concluding that he did not establish the need for maintenance.

¶17 Pamela asserts the District Court did not misconstrue George's health. She contends although George had a history of health problems, he had worked during the marriage, was

9

working on a full-time basis prior to their separation, and the evidence at the time of trial showed George was not disabled. Further, at the time of trial, George had been living separately and apart from Pamela for over five years and he presented no evidence that he lacked sufficient assets to provide for his reasonable needs.

¶18     The District Court found George had a history of health problems over the years and had been diagnosed and successfully treated for cancer. The court also found that George was not receiving any disability payment from the Social Security Administration or public assistance, and that he had no debt after completing his bankruptcy, was currently working part-time, and was not required to contribute to household expenses. Other than the health conditions noted by the District Court, the court found him to be "an otherwise able-bodied man." From our review of the record, these findings were not clearly erroneous. Although George received social security payments prior to the marriage, those ended during the marriage. He showed a history of seizures and cardiac health issues, but he continued to engage in self-employment work as an auto mechanic throughout the marriage. After separation, George was diagnosed with cancer, which was successfully treated, and he is reportedly cancer free. Although George has applied for disability benefits, he has not received a determination on his application. From the parties' separation in February 2017 to trial in February 2022, George lived independently—with a standard of living similar to that he experienced during the marriage prior to separation—on his self-employment earnings and the assets which were ultimately awarded to him in the dissolution. Under these circumstances, the District Court did not misapply § 40-4-203, MCA, or

misapprehend George's health in finding that George failed to demonstrate entitlement to maintenance.

¶19 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶20 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ KATHERINE M. BIDEGARAY