Justice Laurie McKinnon delivered the Opinion of the Court.
***16 ¶ 1 S.B. (Father) appeals from two orders of the Fourth Judicial District Court, Missoula County, terminating his parental rights to his minor children, X.B. and I.B. We affirm and address the following issues:
1. Did the District Court abuse its discretion in determining that Father failed to successfully complete an appropriate treatment plan?
2. Did the District Court err in concluding that Father's conduct or condition rendering him unfit to parent was unlikely to change within a reasonable amount of time?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 W.L. (Mother) and Father are the natural parents of I.B., born in 2012, and X.B., born in 2014. Mother voluntarily relinquished her rights to the children and this appeal only concerns the District Court's termination of Father's parental rights. In October and November 2014, the Department of Public Health and Human Services, Child and Family Services Division (the Department) received reports that Mother and Father used drugs, specifically methamphetamine and marijuana; failed to adequately supervise the children; kept an unsanitary home; and did not ensure the children received medical care. After completing a present danger plan, the Department removed the children and placed them in kinship foster care in Missoula. In December 2014, the Department filed a Petition for Emergency Protective Services (EPS), Adjudication as Youth in Need of Care (YINC), and Temporary Legal Custody (TLC). The District Court granted EPS and subsequently conducted a show cause hearing on January 22, 2015. Father agreed to adjudication of the children as YINC and the court granted the Department TLC for six months. In the spring of 2015, the children moved to a different kinship foster care placement in Helena.
¶ 3 In March 2015, the District Court approved Father's Treatment Plan, to which he stipulated. The Treatment Plan specifically required Father to complete a psychological evaluation within two months or as soon as possible; complete a chemical dependency evaluation within two months; complete parenting classes within two months and participate in parenting coaching sessions; apply for housing assistance and obtain safe and stable housing within three months; participate in counseling or therapy sessions; not use or possess any alcohol or ***17 non-prescription drugs; submit to random alcohol and drug *541 testing; regularly visit the children; and obtain steady employment.
¶ 4 Initially, Father struggled to comply with his Treatment Plan, only participating in a few supervised visits before the children moved to Helena. In July 2015, Father failed to attend a status hearing, at which the Department asked to extend TLC for another six months. The children's Court Appointed Special Advocate (CASA) disagreed with the Department's request to extend TLC. The CASA noted that Father had made no effort to complete his Treatment Plan-Father did not have housing, did not comply with drug testing, and missed his scheduled psychological evaluation. The CASA suggested that the Department move for termination, noting that the children's kinship foster placement provided them stability and permanence. The Department's social worker noted that, based on the children's needs and Father's complete disengagement from the process, early termination may be in the children's best interest. The District Court noted Father's lack of motivation and considered not extending TLC, but ultimately decided to extend for six months.
¶ 5 In August 2015, Father was arrested for possession of methamphetamine with intent to distribute. Father was released the following month and started misdemeanor probation and pretrial supervision. Father's pretrial supervision officer found Father difficult to get along with at that time. Father continued to use marijuana, had a poor attitude, and failed to follow through with his tasks.
¶ 6 Father began to engage in recommended services in October 2015, when he completed a chemical dependency evaluation. The evaluator diagnosed Father with stimulant use disorder, methamphetamine type, severe, and a secondary diagnosis of cannabis use disorder, moderate. Father subsequently began intensive outpatient treatment to address his drug problems. He stopped using drugs and began passing his drug tests. Father also improved his attitude and expressed a desire to get his children back. Father started to make payments on his financial obligations to the court, which included restitution, fines, and other fees.
¶ 7 The District Court held another status hearing in November 2015, at which Father appeared and demonstrated that he had started to work on certain portions of his Treatment Plan. Father was living with his mother (Grandmother) at her home in Missoula. Father obtained employment, was still participating in intensive outpatient treatment, and scheduled his psychological evaluation. Father started to attend parenting classes, but reported that he would have to restart the course at a later date because the classes conflicted with his drug ***18 treatment. The court noted Father's efforts and the Department agreed that Father was taking appropriate steps.
¶ 8 Father completed his psychological evaluation on November 24, 2015. The evaluator noted that Father needed to accomplish and maintain sobriety, recommending that Father continue with intensive outpatient treatment and random drug testing. The evaluator also discovered that Father struggled with depression and suggested that he consider antidepressant medication and cease marijuana use to help his mood. Father also needed to maintain employment and obtain appropriate housing prior to reunification. Father engaged with the evaluator, was interested in the results, and sought feedback.
¶ 9 In December 2015, the District Court extended TLC for another six months, until July 22, 2016. The court held a status hearing in March 2016, at which Father appeared and reported that he was still doing very well. He maintained sobriety and was scheduled to complete intensive outpatient treatment that week, but voluntarily extended his participation in the program. Father maintained his employment and had recently traveled to Helena to visit the children. The Department's social worker noted that Father was doing very well and was generally pleased with Father's progress. The social worker was concerned, however, that fifteen months had already passed and noted that the case needed to be resolved soon. The social worker stated that if the children could not be back in Father's care by July 1, 2016, the Department would petition for termination of Father's parental rights.
*542 ¶ 10 The court held another status hearing in May 2016, at which Father reported that he completed his parenting classes. Father was still employed, continued to follow his probation officer's instructions, and had, again, recently visited the children in Helena. The children were doing well in Helena and I.B. participated in counseling sessions to address her worries regarding her living situation. The CASA identified Father's biggest obstacle as finding affordable housing. Father worked on housing applications with a compliance coach for three sessions. The District Court again noted Father's progress and the Department's social worker agreed that Father was doing well and had completed a lot of his Treatment Plan. The social worker also noted that he was reconsidering his previous decision to petition for termination if the children could not move into Father's home by July 1, 2016.
¶ 11 At a June 7, 2016 status hearing, the Department again noted that Father was doing well with his Treatment Plan, but emphasized the need for appropriate housing. The District Court complimented Father, telling him to "keep up the good work," and noted that it was ***19 not inclined to terminate Father's parental rights just because he did not have his own home. Later that month, the Department stated that it did not intend to petition for termination of Father's parental rights. The Department's social worker recognized that Father was doing very well, but was still concerned with Father's housing situation and the length of time-now nineteen months-that the children had spent in kinship foster care. Father maintained his employment, obtained his own vehicle, and was actively trying to obtain housing. The District Court again complimented Father's efforts, noted Father's hard work and progress, and reiterated that it did not intend to hold Father's housing situation against him. The parties agreed to extend TLC through the end of July until the next status hearing in August.
¶ 12 At the August 2016 status hearing, the Department noted that it was willing to keep working with Father towards reunification, despite the fact that the children had been in kinship foster care longer than preferred. The District Court reiterated its opinion that Father's housing situation should not be the issue that stops him from parenting and extended TLC for another six months, until January 22, 2017. In the fall of 2016, the children visited Father for several successful weekends in Missoula. A housing assistance program approved Father's housing-aid request and provided the option to move into a two-bedroom apartment. However, Father realized that he was unable to afford the rent given his other financial obligations, including restitution and court fines. Instead, Father decided to continue to reside with Grandmother. Father made improvements to Grandmother's home, replacing the flooring and fixing up a bedroom for the children. In November, the District Court noted, and the Department agreed, that Father was making good progress and that the children were likely to end up being placed back with him.
¶ 13 At an intervention conference in November 2016, the parties discussed the children moving in with Father at Grandmother's home. The Department was willing to work with Father to make the transition happen, but first requested that Father and Grandmother take certain steps to prepare the home for the children. The Department asked Father to engage in services to help him with his parental relationship with the children, find a local therapist for I.B., find childcare, comply with random drug tests, set up the children's sleeping spaces, and continue visitation with the children. Grandmother was separated from but still married to a registered sex offender. The Department requested that she formally divorce her husband before the children move into the home. The Department was also uncomfortable with Grandmother's use of medical marijuana and ***20 requested that she stop. Grandmother subsequently complied with the Department's requests, divorcing her husband and relinquishing her medical marijuana card.
¶ 14 In December 2016, Father's sobriety relapsed. He began to use marijuana mid-month, and then used methamphetamine around New Year's Eve. Father tested positive for both drugs on January 2, 2017. Father voluntarily turned himself in on January 20, 2017, was subsequently released, and began *543 daily drug and alcohol testing. Father's last positive drug test was on March 1, 2017. In March 2017, Father's probation officer performed an unannounced home visit. She found drug paraphernalia and some alcohol at the home, which Grandmother said belonged to her. There was also a woman at the home who was not approved to be there. Father completed another chemical dependency evaluation in April 2017, and subsequently began a different type of outpatient therapy with the Missoula Urban Indian Health Center, which incorporated his Native American culture and traditions.[1] Father found the new type of treatment helpful and his therapist reported that Father was responding well.
¶ 15 In spring 2017, the Department petitioned to terminate Father's parental rights. The Department viewed Father's relapse as significant despite Father's sobriety in 2016, and expressed concern that he faced many obstacles inhibiting his ability to parent safely and appropriately. The Department proposed a permanency plan of adoption by the children's kinship foster parents, who were committed to maintaining contact between Father and the children as long as the relationship remained safe and healthy.
¶ 16 The District Court held Father's contested termination hearing May 25-26, 2017. The Department and Father presented multiple witnesses and Father testified. The Department presented evidence that Father did not successfully complete his Treatment Plan, even though he completed many of its tasks. Specifically, Father failed to successfully address his drug use and housing situation, both of which originally rendered him unfit to parent. The Department was convinced that termination was in the children's best interest but emphasized that its decision to petition for termination was a difficult one because Father demonstrated a lot of progress. The CASA testified that Father was a different man now and wished Father could start over. However, given how much time had passed, the CASA "regretfully" supported the Department's request for termination.
***21 ¶ 17 The District Court terminated Father's parental rights. The court recognized that Father was very close to successfully completing his Treatment Plan in December 2016. Father's relapse, however, derailed some of his previous progress. Even though Father had since gotten back on track and into treatment, the court was concerned with how recent those changes were. The District Court further noted that Father only completed some of the tasks that the Department requested at the intervention conference in November 2016. Father set up sleeping spaces for the children, completed visits with the children, and worked on building his relationship with them. He tried to engage in services to help him build his parental relationship, but was put on the waiting list. He made some phone calls to find a local therapist for I.B. but did not solidify one. Family members suggested certain childcare options, but Father never enrolled the children in a specific program. He also did not pass his drug tests at the beginning of 2017.
¶ 18 The District Court's main concern was the length of time that the children had been in kinship foster care-that the children could not wait any longer for Father to complete his Treatment Plan. The District Court determined that adoption by their current kinship foster parents was in the children's best interest and terminated Father's parental rights with oral findings from the bench. The District Court later issued written findings of fact, conclusions of law, and an order. Father appeals the District Court's decision to terminate his parental rights.
STANDARDS OF REVIEW
¶ 19 We review a district court's decision to terminate parental rights for an abuse of discretion. In re A.S. , 2016 MT 156, ¶ 11, 384 Mont. 41, 373 P.3d 848. A district court abuses its discretion when it acts arbitrarily, without employing conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. In re K.A. , 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478. This Court does not disturb a district court's decision on appeal unless "there is a mistake of law or a finding of fact not supported *544 by substantial evidence that would amount to a clear abuse of discretion." In re T.S. , 2013 MT 274, ¶ 21, 372 Mont. 79, 310 P.3d 538 (quoting In re D.B. , 2012 MT 231, ¶ 17, 366 Mont. 392, 288 P.3d 160 ).
¶ 20 We review findings of fact for clear error and conclusions of law for correctness. In re E.Z.C. , 2013 MT 123, ¶ 19, 370 Mont. 116, 300 P.3d 1174. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that ***22 the district court made a mistake. In re T.W.F. , 2009 MT 207, ¶ 17, 351 Mont. 233, 210 P.3d 174.
DISCUSSION
¶ 21 A natural parent's right to the "care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures." In re A.T. , 2003 MT 154, ¶ 10, 316 Mont. 255, 70 P.3d 1247 ; accord In re A.D.B. , 2013 MT 167, ¶ 42, 370 Mont. 422, 305 P.3d 739. Accordingly, courts must follow specific guidelines when terminating parental rights. See §§ 41-3-601 to -612, MCA. A court may terminate a parent-child relationship after adjudicating a child as a YINC and finding that (1) "an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful"; and (2) "the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Section 41-3-609(1)(f), MCA. On appeal, Father argues that the District Court abused its discretion in determining that Father did not successfully complete his Treatment Plan because it was not appropriate. Father also argues that the District Court improperly concluded that the conduct or condition rendering him unfit was unlikely to change within a reasonable time. We address his arguments in turn.
¶ 22 1. Did the District Court abuse its discretion in determining that Father failed to successfully complete an appropriate treatment plan?
¶ 23 Father argues that his Treatment Plan was not appropriate because it did not provide him with a reasonable amount of time to complete certain tasks. Specifically, Father reasons that it was unreasonable to expect him to, within two months, complete a psychological evaluation, a chemical dependency evaluation, and parenting classes and, within three months, apply for and obtain housing, all while staying sober and complying with drug testing. The Department responds, arguing that Father waived his right to appeal the appropriateness of the Treatment Plan by not raising the issue to the District Court. Father acknowledges that he raises the issue for the first time on appeal, but contends that he did not raise the issue below due to the Department's apparent departure from the Treatment Plan's timeline. Father contends that the Department ignored the timeline throughout the proceedings, extending TLC based on Father's progress and making his initial untimeliness a non-issue. Father argues that the Department then unfairly waited until his termination hearing to raise Father's failure to timely comply.
¶ 24 A parent's treatment plan must be appropriate.
***23 Section 41-3-609(1)(f)(i), MCA. The appropriateness of a treatment plan is analyzed on a case-by-case basis, as a "single, generalized definition" is not possible "in light of the unique circumstances of each case." In re D.B. , 2007 MT 246, ¶ 32, 339 Mont. 240, 168 P.3d 691 (hereinafter In re D.B. 2007 ). See also In re T.N.-S. , 2015 MT 117, ¶ 20, 379 Mont. 60, 347 P.3d 1263. To analyze the appropriateness of a treatment plan, the Court looks to various factors, including "whether the parent was represented by counsel, whether the parent stipulated to the plan, and whether the plan takes into consideration the particular problems facing both the parent and the child." In re D.B. 2007 , ¶ 32 (internal quotations omitted). See also In re C.J.M. , 2012 MT 137, ¶ 15, 365 Mont. 298, 280 P.3d 899. The Court also considers "whether the plan contains reasonable timelines or deadlines." In re D.B. 2007 , ¶ 36. However, we consistently hold that a "parent who does not object to a treatment plan's goals or tasks waives the right to argue on appeal that the plan was not appropriate."
*545 In re C.M. , 2015 MT 292, ¶¶ 14-16, 381 Mont. 230, 359 P.3d 1081 (holding that mother waived her argument regarding the appropriateness of her treatment plan's timeline because she raised the issue for the first time on appeal); In re D.S.B. , 2013 MT 112, ¶ 10, 370 Mont. 37, 300 P.3d 702 (quoting In re H.R. , 2012 MT 290, ¶ 10, 367 Mont. 338, 291 P.3d 583 ).
¶ 25 The Department proposed Father's Treatment Plan in March 2015. At that time, counsel represented Father and the Treatment Plan considered the particular problems facing Father and the children. See In re D.B. 2007 , ¶ 32. Father could have requested that the Department extend the two- and three-month timelines before stipulating to the plan. Instead, Father agreed to, and the court approved, the Treatment Plan. See In re D.B. 2007 , ¶ 32. Father did not raise the timelines' appropriateness to the District Court and also does not request that we exercise plain error review on appeal. We are therefore inclined to find that he waived the issue. However, an appropriate treatment plan must contain a reasonable timeline, see In re D.B. 2007 , ¶ 36, and we are cognizant of the fact that the Department departed from the Treatment Plan's timeline and did not fault Father for his initial untimeliness. If Father had no reason to object to the timeline based on the Department's actions, but the Department later used Father's untimeliness against him at his termination hearing, it would be unfair to now fault him for failing to previously object.
¶ 26 Our review of the record, however, convinces us that the Department did not seek termination of Father's parental rights due ***24 to Father's failure to meet the two- and three-month timelines. The court approved Father's Treatment Plan in March 2015. Father did not complete a psychological evaluation, a chemical dependency evaluation, and parenting classes within two months and did not apply for and obtain housing within three months. Father also did not comply with drug testing during that time period. Yet, in July 2015, the Department requested that the court extend TLC for another six months. Father started to meaningfully engage in services in October 2015, when he completed his chemical dependency evaluation, and Father subsequently completed his psychological evaluation in November 2015. In 2016, Father maintained sobriety and completed his parenting classes. Father's housing situation remained an outstanding issue, but in November 2016, the Department and Father developed a plan to transition the children into Grandmother's home. Throughout the proceedings, both the Department and the District Court expressed hopefulness that Father would be reunified with the children and complimented Father on his hard work and progress.
¶ 27 The Department did not petition for termination of Father's parental rights until the spring of 2017, two years after Father stipulated to the Treatment Plan. That decision was mainly due to concerns about how long the children had been in kinship foster care, Father's relapse that set him back on his drug-treatment progress, and the fact that Grandmother's home was not ready for the children to move into. At Father's termination hearing, the Department presented evidence that Father failed to complete the tasks within the Treatment Plan's timeline and the District Court made similar findings. However, the District Court did not exclusively rely on Father's failure to timely complete the tasks when it terminated Father's parental rights, and even if we decided the timelines were inappropriate, there is substantial credible evidence to support the District Court's finding that Father did not complete other portions of the Treatment Plan. See In re D.B. , 2004 MT 371, ¶¶ 45-46, 325 Mont. 13, 103 P.3d 1026 (stating that, even if mother's treatment plan contained inappropriate tasks, inclusion of those tasks constituted harmless error because the district court had substantial credible evidence to support its finding that mother did not complete her treatment plan).
¶ 28 A parent must completely comply with his treatment plan-partial or even substantial compliance is insufficient. In re J.A.B. , 2015 MT 28, ¶ 27, 378 Mont. 119, 342 P.3d 35 ; In re H.R. , ¶ 12 ; In re L.H. , 2007 MT 70, ¶ 19, 336 Mont. 405, 154 P.3d 622. Father made significant progress and came very close to completing his Treatment Plan in December 2016. However, timelines aside, *546 Father ***25 failed to maintain sobriety and failed to obtain safe and stable housing for the children. We accordingly find that the District Court did not abuse its discretion in terminating Father's parental rights based on his failure to successfully complete his Treatment Plan.
¶ 29 2. Did the District Court err in concluding that Father's conduct or condition rendering him unfit to parent was unlikely to change within a reasonable amount of time?
¶ 30 Father argues that the District Court erred in finding that the conduct or condition rendering him unfit was not likely to change within a reasonable amount of time, contending that the District Court made numerous erroneous findings upon which it based its decision. Father also points to all of the tasks that he successfully completed, including psychological and chemical dependency evaluations, visitation with the children, and a renewed commitment to sobriety and drug-treatment following his relapse. The Department responds, arguing that substantial evidence existed to support the District Court's conclusion that Father's conduct or condition rendering him unfit or unable to parent was unlikely to change in a reasonable amount of time.
¶ 31 In determining that the conduct or condition rendering a parent unfit is unlikely to change within a reasonable time, the "court shall enter a finding that continuation of the parent-child relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA. In doing so, the court must consider a variety of factors, including "any emotional or mental illnesses that render the parent unable to care for the child, any history of violent behavior by the parent, excessive use of alcohol or drugs, the parent's incarceration if applicable, and any other relevant evidence." In re R.M.T. , 2011 MT 164, ¶ 31, 361 Mont. 159, 256 P.3d 935 (citing § 41-3-609(2)(a)-(d), MCA ). The district court should assess a parent's past and present conduct. In re A.H. , 2015 MT 75, ¶ 36, 378 Mont. 351, 344 P.3d 403 (citing In re D.H. , 2001 MT 200, ¶ 32, 306 Mont. 278, 33 P.3d 616 ).
¶ 32 The court must "give primary consideration to the physical, mental, and emotional conditions and needs of the child," as a natural parent's right to parent his child is superseded by a child's need for a permanent, stable, and loving home. Section 41-3-609(3), MCA ; In re D.A. , 2008 MT 247, ¶ 21, 344 Mont. 513, 189 P.3d 631. A child's best interests are paramount in a termination proceeding and take precedence over parental rights. In re D.H. , ¶ 32. "Most importantly, children need not be left to 'twist in the wind' when their parents fail ***26 to give priority to their stability and permanency." In re T.S. , ¶ 30 (quoting In re A.D.B. , ¶ 80 ). Termination of parental rights is presumed to be in a child's best interest if the child has been in foster care "for 15 months of the most recent 22 months." Section 41-3-604(1), MCA.
¶ 33 Father specifically argues that the District Court erred in finding that Father did not engage in individual therapy sessions as required by the Treatment Plan and recommended by multiple professionals. Father emphasizes that he actively engaged in appropriate therapy throughout the proceeding, including the intensive outpatient treatment program, meetings with probation officers, and group and individual therapy sessions at the Missoula Urban Indian Health Center. We recognize that the District Court erred in finding that Father never completed individual therapy, as the record demonstrates that, in the spring of 2017, Father started to participate in individual therapy with his counselor at the Missoula Urban Indian Health Center. Father argues that his therapist's testimony, as well as testimony from Father's pretrial services officer, proves that Father's chemical dependency and mental health issues were under control at the time of the termination hearing.
¶ 34 We acknowledge that Father made significant progress between his December 2016 relapse and the termination hearing. At the May 2017 termination hearing, Father presented evidence indicating that he was actively working to address his chemical dependency and mental health issues. However, *547 the Department removed the children from Father's care in late-2014, largely based on concerns with Father's drug use. Father continued to struggle with chemical dependency after the Department removed the children from his care. He was arrested on drug-related charges in August 2015, and did not start to address his drug issues until October 2015. Once father started to actively engage in services, both the Department and the District Court were committed to Father's success; the District Court extended TLC multiple times and the Department reconsidered its decision to petition for termination if Father was unable to transition the children into his care by July 1, 2016. Father's year of sobriety in 2016 is impressive and demonstrates hard work on his part, but, unfortunately, his relapse demonstrated that he was not yet ready to parent the children.
¶ 35 At the time of the termination hearing, the children had lived in kinship foster care for thirty consecutive months, double the amount of time in which it is statutorily presumed that termination of parental rights is in the children's best interest. See § 41-3-604(1), MCA. Even ***27 though Father regained his sobriety and was actively participating in therapy, the fact remains that the children had lived in kinship foster care for too long at that point, and the District Court was required to presume that termination was in their best interest. The children needed stability and permanency-I.B. had concern and anxiety about where and with whom she would ultimately live. Further, Father's drug use was not the only problem; based on a March 2017 home visit, Grandmother's home was not ready for the children to move into. Placing the children's best interests above Father's right to parent, and, based on the children's need for stability and permanency and Father's past and present conduct, we affirm the District Court's decision that the conduct or condition rendering him unfit to parent was not likely to change within a reasonable amount of time.
¶ 36 Finally, we address Father's contentions that some of the District Court's findings are not supported by substantial evidence. Father argues that the District Court erred in finding that Father failed to obtain appropriate housing and that the Department inappropriately added tasks to Father's Treatment Plan at the November 2016 intervention conference. While Father did not obtain independent housing as required by his Treatment Plan, the Department decided it was willing to work with Father to move the children into Grandmother's home. Therefore, at the November 2016 intervention conference, the group developed specific tasks for Father and Grandmother to complete before the children could transition back into Father's care. The Department's tasks were meant to help Father by letting him parent the children at Grandmother's home instead of obtaining independent housing as originally contemplated by Father's Treatment Plan. It was not inappropriate for the Department to hold Father to those expectations before transitioning the children into his care.
¶ 37 The other errors that Father points to are inconsequential. Father alleges that the District Court erred in finding that he used methamphetamine and marijuana from approximately December 2016 through February 2017. Father may not have actively used methamphetamine and marijuana through February 2017, but he did test positive for marijuana for the last time on March 1, 2017. Father also alleges that the District Court erred in finding that he failed to set up childcare in Missoula after the November 2016 intervention conference. Father had conversations about and inquired as to different childcare options, but Father did not enroll the children in a specific program. Father further alleges that the District Court erred in finding that he stopped visiting the children in December 2016 and ***28 January 2017. The children did visit Father in December 2016, but did not visit him in January 2017, following Father's relapse.
¶ 38 The District Court had the unenviable task of assessing Father's capability of parenting and prognosis for maintaining sobriety in light of Father's history of significant drug addiction. In circumstances such as these, we are guided by the standard of review and are cognizant that the District Court is in the best position to consider the countervailing interests at issue. While Father's right to parent is fundamental, the District Court specifically noted the children's *548 "fundamental, inalienable rights to be free of abuse and neglect and to be provided with a safe, healthy physical and emotional environment adequate to promote their normal development." All children "have a right to a healthy and safe childhood in a permanent placement," § 41-3-101(1)(e), MCA, and the District Court's termination of Father's parental rights is supported by substantial credible evidence. The Department provided Father with ample time to work on his Treatment Plan and regain custody of his children. Father worked hard on his Treatment Plan tasks, but, unfortunately, Father's conduct demonstrated that the conditions rendering him unfit were not likely to change within a reasonable time. At the time of the termination hearing, the children had lived in kinship foster care for thirty consecutive months, and placing their best interests above Father's right to parent requires us to affirm the District Court's decision.
CONCLUSION
¶ 39 The District Court did not abuse its discretion in determining that Father failed to successfully complete an appropriate treatment plan and also did not err in concluding that Father's conduct or condition rendering him unfit to parent was unlikely to change within a reasonable amount of time. We therefore affirm the District Court's orders terminating Father's parental rights to X.B. and I.B.
We concur:
MIKE McGRATH, C.J.
JIM RICE, J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.

The children are not eligible for tribal enrollment and this is not an ICWA case.