Justice Beth Baker delivered the Opinion of the Court.
***369 ¶1 P.B. ("Father") appeals the District Court's order terminating his parental rights to his daughter, M.B. He argues that the Department of Public Health and Human Services, Child and Family Services Division ("Department"), violated his right to due process *608 when it withheld discovery. He also argues that the District Court erred in determining that the Department met its burden under § 41-3-609(1)(f), MCA, to terminate Father's parental rights to M.B. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 Father and A.B. ("Mother") lived in Eureka with M.B. and Mother's older children. Father worked in Alaska, generally working two weeks at his job site and then returning home for two weeks. Mother cared for the children when Father was in Alaska. In December 2014, the Department requested emergency authority to investigate the children's well-being because Mother was leaving M.B. home with her siblings without appropriate care for significant periods while Father was away. The District Court granted temporary investigative authority in January 2015, and the children were placed in the care of family friends. In April 2015, the District Court adjudicated M.B. as a youth in need of care and granted the Department temporary custody on the basis that Mother was not providing care for M.B. and Father had been unable to care for M.B. or to make arrangements to provide for her care while he was away. After the hearing, M.B. remained in the care of the family friends, who agreed to foster her.
¶3 The District Court ordered treatment plans for Father in April 2015 and in October 2015. Father was represented by counsel when both treatment plans were ordered. Neither Father nor his attorney signed the April 2015 treatment plan. Father and his attorney signed the October 2015 treatment plan.
¶4 The Department filed a petition for permanent legal custody and termination of Father's parental rights in November 2016. After many continuances, the District Court held a termination hearing in November 2017. At the hearing, Father argued for the first time that his treatment plans were inappropriate. He also argued that the Department violated his due process rights because it withheld discovery. On that basis, he moved the District Court to dismiss the case or to continue the hearing to allow him to review the "evidence ***370 that is at play." The District Court denied Father's motion and later entered its written Findings of Fact, Conclusions of Law, and Order Granting the Department Permanent Legal Custody With Right to Consent to Adoption and Terminating Parental Rights, as to Mother and Father. Father appeals.
STANDARDS OF REVIEW
¶5 We review a district court's decision to terminate parental rights for an abuse of discretion. In re K.A. , 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478. We review findings of fact for clear error and conclusions of law for correctness. In re A.H. , 2015 MT 75, ¶ 25, 378 Mont. 351, 344 P.3d 403.
¶6 We review a district court's ruling on a discovery matter for an abuse of discretion. In re S.C. , 2005 MT 241, ¶ 16, 328 Mont. 476, 121 P.3d 552. A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice. In re K.A. , ¶ 19.
DISCUSSION
¶7 Issue One: Did the District Court err when it determined that the Department did not violate Father's right to due process when it withheld discovery?
¶8 A parent's right to the care and custody of a child is a fundamental liberty interest that must be protected by fundamentally fair procedures. In re A.H. , ¶ 25. Parents "subject to parental termination proceedings have the full right to discover the case against them. We look askance at blanket denials or other discovery orders which hinder a party's effort to do so." In re S.C. , ¶ 24. Father's attorney attempted to conduct informal discovery of the Department's file regarding the case beginning in April 2017. Counsel reviewed the Department's file, but found the file lacked the desired notes and e-mail correspondence. In July 2017, having made substantial effort to discover the case file, documents, and correspondence in the case and receiving unsatisfactory responses from the Department, Father's attorney commenced formal discovery, which included requests for copies of written communications, *609 including letters, text messages, and e-mails. On October 13, 2017, Father's attorney filed a motion to compel discovery and for sanctions on the basis that the Department had not produced all the information requested. On October 23, 2017, the District Court entered an order directing the Department to have Child Protection Specialist Robert Weber ("CPS Weber") make his file ***371 available to Father's attorney for inspection and to submit to a deposition. On November 1, 2017, the Department represented to Father's attorney that it had no additional relevant or discoverable e-mails to produce. Based on that representation, Father's attorney did not review the file or depose CPS Weber.
¶9 During the termination hearing, both Father's counselor and M.B.'s foster mother testified about their e-mail communication with CPS Weber. Father's attorney objected, arguing that their testimony proved not all relevant communications had been produced to Father as the Department had represented. The Department argued that it had been diligent in its efforts to produce the information Father requested and that Father had not taken advantage of the court's order by either reviewing the file or deposing CPS Weber. Father's attorney argued that because the Department had violated its discovery obligations, Father was not able to prepare properly for the hearing and was denied due process, and the District Court should dismiss the case or grant a continuance of the hearing. After considering the arguments, the District Court proceeded with the termination, holding that Father had received due process.
¶10 Father argues that the evidence he sought from the Department may have contained exculpatory information and that he had the right to review that information in order to decide how he would defend himself, akin to the discovery standards of Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We have not held, however, that Brady applies to parental termination cases. An abuse and neglect proceeding is a civil action, and the Montana Rules of Civil Procedure and Rules of Evidence apply. See § 41-3-422(4), MCA ; In re S.C. , ¶ 21.
¶11 Under the relevant civil discovery rules, providing access to the Department's files for inspection and photocopying should give parents "every piece of information available to the State or its counsel" and would provide adequate discovery. See In re S.C ., ¶ 22 (internal quotations omitted). Here, the District Court's order allowing Father to review the Department's file and depose CPS Weber "appears" to provide Father adequate discovery. See In re S.C ., ¶ 22. However, either the Department failed to keep adequate records of the communications or it failed its duty to provide "additional or follow up discovery" when it represented to Father after the court's order that there were no further communications to produce. In re S.C. , ¶ 22. The Department does not contend that e-mail communications with CPS Weber concerning Father's parental rights would not be discoverable. The Department's representation that it had provided all discoverable information reasonably left Father to believe a further review of the ***372 file or a deposition would have been fruitless.
¶12 Father argued to the District Court that he was entitled to know what communications the Department was using to determine that Father had not completed his treatment plan. The Department's attorney insisted that the Department had provided Father with everything it could find related to M.B.'s case, stating that he had asked CPS Weber to review his file and that he had made all relevant and discoverable information available to Father. The District Court expressed its frustration with the situation, but it concluded that Father had been afforded due process and declined to dismiss or continue the case. The District Court observed that its determination of Father's parental rights would not be made on "affidavit testimony" but on the testimony of the witnesses during the multi-day hearing.
¶13 Father testified on his own behalf and cross-examined the witnesses, including the witnesses whose communications had not been disclosed properly. Father had ample opportunity to question the witnesses about any interactions with him or with M.B., and about their communications with CPS Weber. CPS Weber and Father's counselor both testified to their own knowledge of Father's actions and inactions, CPS Weber explained the basis for his decision to seek termination, *610 and Father questioned both about their conclusions and opinions.
¶14 A district court may enter sanctions against a party who fails to comply with a discovery order, including staying proceedings until the order is obeyed or dismissing the action or proceeding in whole or part. M. R. Civ. P. 37(b)(2). "District courts are better positioned than we are to evaluate the conduct and good faith of parties during discovery, and as such they enjoy considerable leeway in sanctioning discovery abuses." Cox v. Magers , 2018 MT 21, ¶ 25, 390 Mont. 224, 411 P.3d 1271 (internal quotations and citation omitted). The District Court found, based on the hearing testimony, that Father had not complied with or completed his treatment plan and that he was unlikely to do so within a reasonable period of time. Father has not alleged any information in the undiscovered communications that could have led to additional evidence that would defeat the Department's petition, such as information tending to show compliance with his treatment plan. Violation of discovery rules does not equate to violation of the Constitution. The District Court acted within its discretion when it determined that Father's due process rights were not violated by the Department's failure to comply with its discovery obligation. Although we do not adopt the District Court's reasoning in full, we conclude that it did not commit reversible error in denying ***373 Father's requested relief.
¶15 Issue Two: Did the District Court err in determining that the criteria under § 41-3-609(1)(f), MCA, merited terminating the parental relationship between Father and M.B.?
¶16 A district court may terminate parental rights upon a finding by clear and convincing evidence pursuant to § 41-3-609(1)(f), MCA, that:
the child is an adjudicated youth in need of care and both of the following exist: (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.
¶17 Father argues that the treatment plans the District Court ordered were not appropriate. In In re J.B. , we held that the father waived his argument regarding the propriety of a treatment plan when he first objected to the plan's lack of deadlines a year after the plan was approved, just before the hearing to terminate his parental rights. In re J.B. , 2016 MT 68, ¶ 17, 383 Mont. 48, 368 P.3d 715. Here, Father did not object to his treatment plans at any time before the termination hearing. Over two years passed between the District Court's entry of the treatment plans and the time of the termination hearing. Even during the twelve months it took to finally bring the termination petition to hearing, Father never alerted the District Court to the concerns he now argues about the treatment plans. We hold that Father waived appellate review of his contention that his treatment plans were inappropriate.
¶18 Aside from his arguments about treatment plans, Father has not demonstrated clear error in the District Court's findings that Father did not comply with the plans. The District Court heard testimony that Father had not met the supervision requirements of his visitation with M.B., that Father had made only one inquiry into local employment so that he might be more available to care for M.B., and that until the day of the termination hearing Father had failed to present a viable plan to provide for M.B.'s care while working in Alaska. The therapeutic foster care manager testified that M.B. had significant emotional and behavioral issues, which seemed to worsen after visits with Father. Father admitted that he had questioned these issues and made no efforts to address them. She also testified, and Father disputed, that M.B. and Father did not seem to have a strong bond.
¶19 The Department presented evidence that Father failed to comply with or complete the counseling and relationship requirements of his treatment plans, specifically the October 2015 plan that Father had ***374 signed. Regarding the requirement that Father continue counseling and follow his counselor's recommendations, Father testified that he quit counseling because he had believed he *611 was required to complete only marriage counseling with Mother, not individual counseling. He argued that the Department changed the requirement that he resolve his relationship with Mother to a requirement that he have no contact with Mother, without telling him or adding the new requirement to the treatment plan in writing. The evidence supports the District Court's finding, however, that Father failed to comply with the relationship requirements of the treatment plan as it was originally written and had been unable to demonstrate that he could put M.B.'s interests first. The plan required Father to resolve his relationship with Mother within sixty days in order to provide stability for M.B. and meet her best interests and to maintain that decision throughout the treatment plan period. The plan stated that, if Father and Mother "chose to establish and maintain separate residences," it would be expected that "they will NOT reside with one another or be approved in one another's residences at any time throughout their treatment plan," and that Father would be expected to "establish appropriate boundaries with [Mother] and meet his treatment plan tasks independently from her ... evidenced by [Father's] choices in his contact with [Mother]."
¶20 Father testified that he knew the Department had told him that if Mother did not complete her treatment plan he would need to make alternate arrangements on his own so that he could parent M.B. He stated that he had "tried" to separate from Mother for approximately three years, but his testimony showed that he had not succeeded. He testified that the last time he had lived with Mother was in June 2017 and that otherwise he had spent time with Mother "off and on" until October 2017. He stated that although he had changed the locks on his home, he had since allowed Mother into the home. Although he stated he had stayed away from his home recently, he guessed that Mother was at his home at the time of the termination hearing. He also testified that while he was not up-to-date on his financial support for M.B., he had provided significant financial support to Mother, including bailing her out of jail, giving her money to relocate, and paying for substance abuse treatment.
¶21 Father and other witnesses testified that he had completed several requirements of his treatment plans. The law is clear, though, that "partial compliance with a treatment plan is insufficient to preclude termination of parental rights." In re K.L. , 2014 MT 28, ¶ 28, 373 Mont. 421, 318 P.3d 691. Undoubtedly, Father met several of the treatment plan requirements. But his failure to comply with the ***375 counseling and relationship components convinced the District Court that he had not sufficiently focused on M.B.'s best interests.
¶22 The District Court did not find Father's testimony credible that if given another chance and another treatment plan he would prioritize M.B.'s needs and prevent unauthorized contact between Mother and M.B. Substantial evidence supports the District Court's determination that Father was unable to prioritize M.B.'s best interests, that he failed to comply with or complete his written treatment plans, and that such conduct was unlikely to change within a reasonable amount of time. The court employed conscientious judgment in reaching its decision; we will not substitute our judgment for that of the trial court.
CONCLUSION
¶23 Father has not established that the Department's failure to provide complete discovery amounted to a violation of due process. We decline to review Father's claim that his treatment plans were inappropriate. The District Court's findings are supported by substantial evidence, and its conclusions of law are correct. It did not abuse its discretion. The District Court's order terminating Father's parental rights is affirmed.
We concur:
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.