FILED

01/06/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0198

DA 20-0198

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 7N

IN THE MATTER OF:

M.D.U-N.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 18-030
Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Taryn Gray, Driscoll Hathaway Law Group, Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney, Amanda O'Shea Tiernan,
Deputy County Attorney, Billings, Montana

Submitted on Briefs:  December 2, 2020

Decided:  January 6, 2021

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    J.U-N. (Father) appeals from a March 9, 2020 order of the Thirteenth Judicial District Court, Yellowstone County, terminating his parental rights of child, M.D.U-N.[1] We affirm.

¶3    In a related 2008 abuse and neglect proceeding (DN 08-065),[2] M.D.U-N.'s mother (Mother) relinquished her parental rights to M.D.U-N. The Department of Health and Human Services (Department) requested temporary legal custody in the matter, and M.D.U-N. was placed with Father in compliance with the placement preference requirements specified in the Indian Child Welfare Act (ICWA), which was thought at the time to apply based on Father's membership in the Ak-Chin Indian Community (Community) in Maricopa, Arizona. In this earlier proceeding, the Department filed a Notice of Involuntary Child Custody Proceeding to comply with ICWA, which was served on the Bureau of Indian Affairs and the Community. In response to that notice, the Community sent a letter, dated July 21, 2008, stating M.D.U-N. was not eligible for

---

[1] The child is referred to as both "M.D.U." and "M.D.U-N." in the district court record. We will refer to the child as "M.D.U-N."

[2] The case file for DN-08-065 is part of the record in this appeal.

2

enrollment with the Community because Mother was not Native American.[3] The letter also stated the Community would not intervene in DN 08-065. The record from this earlier proceeding shows that the Department, the parties, and the court determined M.D.U-N. was not eligible for enrollment with the Community.

¶4 On January 10, 2018, Father caused significant injuries to T.U-N., M.D.U-N.'s older sister. The Department commenced dependent and neglect proceedings involving 10-year-old M.D.U-N. (DN 18-030) and T.U-N. (DN 18-029), on January 16, 2018. The Department sought emergency protective services over the children due to Father's inability to provide a safe environment, the children's exposure to physical abuse, and possible alcohol abuse affecting Father's ability to safely and appropriately care for M.D.U-N. and T.U-N.[4] The District Court granted the Department's request on January 19, 2018, pending a show cause hearing.

¶5 On January 12, 2018, Father informed Child Protective Specialist (CPS) Kasia Harvey that Father was an enrolled member of the Community and he believed M.D.U-N. was eligible for enrollment. He told CPS Harvey that M.D.U-N. was eligible for enrollment and the paperwork was pending. CPS Harvey spoke with Ak-Chin Tribal Enrollment (ATE) and ATE informed CPS Harvey that Father was an enrolled member with a blood quantum of one-fourth but stated M.D.U-N. was not eligible for enrollment based on Father's blood quantum alone. ATE stated that if Mother was Native American

---

[3] This letter was not filed in the current proceedings.

[4] There were prior reports of possible abuse and neglect in the home and Department involvement with the children and their parents.

3

and enrolled in another tribe, he could be eligible for enrollment. CPS Harvey found the 2008 letter from the earlier proceeding indicating that M.D.U-N was not eligible for enrollment and the Community would not intervene in the 2008 matter. In her affidavit supporting the Department's January 16, 2018 petition, Harvey attested to her investigation into ICWA applicability and asserted: "To the best of my knowledge and belief, [M.D.U-N.] is not an Indian Child subject to the Indian Child Welfare Act."

¶6 At a February 5, 2018 show cause hearing in DN 18-030, Father stipulated to, and the District Court granted, continued emergency protective services to the Department, and the District Court adjudicated M.D.U-N. as a youth in need of care. Father was represented by counsel. On March 26, 2018, the Department and Father stipulated to a Treatment Plan for Father. Father, again represented by counsel, requested one modification and the State agreed to the modification. Thereafter, Father never objected to the appropriateness, contents, tasks, or requirements of the Treatment Plan. The record is devoid of any objections to the tasks in the Treatment Plan or the appropriateness or content of the Treatment Plan. The District Court, Department, and Father all signed and approved the Treatment Plan.[5] About five months after adjudication, the State reported at a status

---

[5] Per the Treatment Plan, Father was required to: schedule and complete a chemical dependency evaluation from an approved provider within 30 days and follow all recommendations; complete random alcohol testing from an approved provider; schedule and complete a psychological evaluation from an approved provider within 90 days and follow recommendations; schedule and attend individual counseling from an approved provider; contact CPS worker to determine parenting intentions; enroll in and attend the next available parenting classes within 90 days; schedule and complete a parent/child interaction assessment with an approved provider and follow all recommendations; schedule and complete an anger assessment from an approved provider within 90 days and follow all recommendations; and meet with the assigned CPS worker, as requested, to review progress.

4

hearing that there had been a lack of engagement by Father with the Department and it intended to petition for termination "if things [didn't] change radically in the next month." Father did not make progress on the Treatment Plan.

¶7 On September 25, 2018, the Department filed a Petition for Permanent Legal Custody and Termination of Parental Rights with Right to Consent to Adoption. The petition included an affidavit from CPS Brittney Anderson. The Department did not serve the Community with a Notice of Involuntary Child Custody Proceeding, and it did not file a certified mail receipt. The District Court scheduled a hearing on the petition, but the hearing was continued several times to allow Father's criminal matter involving T.U-N. to conclude.[6] The termination hearing commenced on December 17, 2019 and concluded on February 21, 2020. At the hearing, CPS Anderson testified that M.D.U-N. was not an Indian child defined by ICWA but noted that the efforts to determine ICWA status were made prior to her involvement in the case.[7] CPS Anderson testified that she did not have any reason to believe that M.D.U-N. was enrolled or was enrollable in any tribe.

¶8 The District Court also heard testimony related to Father's noncompliance with the Treatment Plan. Although Father completed a violent-risk assessment, he did not meet with the provider to review the results of the assessment; Father did not complete an anger management course as recommended; and he did not participate with an individual

---

[6] Father was ultimately convicted of felony assault on a minor and misdemeanor Partner Family Member Assault. The criminal case file is part of the record in this appeal.

[7] CPS Anderson managed the case from March 2018 to December 2018. CPS Harvey managed the case prior to March 2018 and determined M.D.U-N.'s ICWA status during her time managing DN 18-030.

5

counselor to specifically address the results of the assessment. CPSs Anderson and Ashlee Walker both testified about Father's lack of engagement with the Department. Despite active efforts to communicate with Father, keep him updated on M.D.U-N., and engage him in services, the record indicates Father's communication with the Department was minimal and inconsistent. Furthermore, Father could have contacted the Department to make arrangements to contact his child, but made no effort to do so.

¶9 The District Court entered its Order terminating Father's parental rights on March 9, 2020, finding and concluding that: M.D.U-N. was not eligible for membership in any Indian tribe; M.D.U-N. had been adjudicated a youth in need of care; Father failed to fully comply with his appropriate court-approved Treatment Plan; Father's Treatment Plan "was appropriately tailored to rehabilitate his parenting skills for the purpose of reuniting him with [M.D.U-N.]"; and the plan was unsuccessful. The District Court concluded the conduct and condition rendering Father unfit was unlikely to change within a reasonable time and termination of Father's parental rights was in M.D.U-N.'s best interests.

¶10 Father raises two issues on appeal. The first issue is whether the Department failed to provide initial notice of involuntary child custody proceedings pursuant to ICWA. "We review a district court decision to terminate parental rights for an abuse of discretion under the applicable standards of Title 41, chapter 3, MCA, and ICWA, Title 25, chapter 21, U.S.C." *In re L.D.*, 2018 MT 60, ¶ 10, 391 Mont. 33, 414 P.3d 768 (citation omitted). We review factual findings in parental termination orders for clear error and conclusions of law for correctness. *In re C.M.*, 2019 MT 227, ¶ 13, 397 Mont. 275, 449 P.3d 806.

6

¶11    25 U.S.C. § 1912(a) states:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.

¶12    In dependency and neglect cases, ICWA only applies if a child meets the definition of an Indian child, which requires the child is under 18 years old, unmarried, and is either (1) an enrolled tribal member; or (2) eligible for enrollment and the child's biological parent is an enrolled member. *In re J.J.C.*, 2018 MT 317, ¶ 14, 394 Mont. 35, 432 P.3d 149 (citing 25 U.S.C. § 1903(4)). Only if and when the court "has reason to know that an Indian child is involved" in a dependency and neglect proceeding must the Department notify the Indian child's tribe of the pending proceedings and the tribe's right of intervention. *In re S.R.*, 2019 MT 47, ¶ 15, 394 Mont. 362, 436 P.3d 696 (quoting 25 U.S.C. § 1912(a)) (internal quotations omitted). This Court recently ruled that "whenever a court 'knows or has reason to know' that a child is an 'Indian Child' under ICWA, the court is to verify the child's status prior to conducting termination proceedings." *In re M.T.*, 2020 MT 262, ¶ 21, 401 Mont. 518, 474 P.3d 820 (citing 25 U.S.C. § 1912(a)). "Whether a child is eligible for tribal membership is a question of fact dependent upon the child's actual ancestry, and an Indian tribe provides the determination conclusively as a matter of law." *In re M.T.*, ¶ 21 (citing C.F.R. § 23.108(b)).

¶13    Although Father's statements to CPS Harvey on July 12, 2018, may have given the Department a "reason to know" about M.D.U-N.'s potential eligibility for enrollment with

7

the Community, that is not the only fact in the record. Father's statements to CPS Harvey prompted an investigation into M.D.U-N.'s enrollment status, and as CPS Harvey stated in her affidavit, ATE confirmed M.D.U-N. was not eligible for enrollment, which ultimately led to the conclusion that M.D.U-N. was not an 'Indian child' under ICWA. CPS Harvey verified M.D.U-N.'s status with the Community's enrollment office prior to Father's termination proceedings commencing. Evidence in the record, in both DN 08-065 and DN 18-030, establishes that neither the Department nor the District Court had reason to know M.D.U-N. was an Indian child after CPS Harvey's investigation into the matter. To the contrary, the record supports the fact that Father's tribe made a conclusive determination that M.D.U-N. was ineligible for enrollment. Because there was sufficient evidence in the record to support a finding of fact and conclusion of law that M.D.U-N. was not an Indian child, the Department was not required to notify the Community of the pending proceedings.

¶14    The second issue Father raises on appeal is whether the District Court properly terminated Father's parental rights pursuant to required statutory criteria, including the approval of an appropriate treatment plan. Specifically, Father argues the District Court abused its discretion when it approved Father's treatment plan because the Treatment Plan was not sufficient on its face pursuant to the criteria in § 41-3-443(2)(a)-(e), MCA.

¶15    "A court may terminate parental rights when: (1) a child has been adjudicated as a youth in need of care; (2) an appropriate treatment plan approved by the court has not been complied with by the parent or has not been successful; and (3) the conduct or condition of the parent rendering him or her unfit is unlikely to change within a reasonable time."

8

Section 41-3-609(1)(f), MCA. Father is not challenging the first and third factors but asserts for the first time on appeal that the Treatment Plan was statutorily deficient under § 41-3-443, MCA. This Court has consistently held that "a parent who does not object to a treatment plan's goals or tasks waives the right to argue on appeal that the plan was not appropriate." *In re X.B.*, 2018 MT 153, ¶ 24, 392 Mont. 15, 420 P.3d 538; *In re C.M.*, 2015 MT 292, ¶ 15, 381 Mont. 230, 359 P.3d 1081; *In re C.B.*, 2014 MT 4, ¶ 16, 373 Mont. 204, 316 P.3d 177; *In re D.S.B.*, 2013 MT 112, ¶ 10, 370 Mont. 37, 300 P.3d 702; *In re T.S.*, 2013 MT 274, ¶ 27, 372 Mont. 79, 310 P.3d 538. A parent's failure to timely object to the district court's determination that a treatment plan is appropriate precludes appellate review of that issue. *In re M.B.*, 2018 MT 205, ¶ 17, 392 Mont. 368, 424 P.3d 606. Father did not bring his claim that the Treatment Plan was statutorily deficient to the attention of the District Court and never objected to the Treatment Plan's tasks or content after signing the Treatment Plan. Such claims are not reviewable on appeal absent objection and preservation before a district court. We therefore decline to address the issue on appeal.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17 Affirmed.

/S/ LAURIE McKINNON

9

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA